Zein E. Obagi, Jr. (State Bar No. 264139)
*zo@obagilaw.com*
Tara Hattendorf (State Bar No. 327253)
*th@obagilaw.com*
**OBAGI LAW GROUP, P.C.**
811 Wilshire Boulevard, Suite 1721
Los Angeles, CA 90017
Telephone: (424) 284-2401

Attorneys for Petitioner
DAVID CHRISTOPHER FORBES

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID CHRISTOPHER FORBES, an individual,<br><br>Plaintiff,<br><br>v.<br><br>OFFICE OF THE COMPTROLLER OF THE CURRENCY OF THE UNITED STATES,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR JUDICIAL REVIEW OF AGENCY ACTION UNDER 5 U.S.C. § 701, ET SEQ.** |

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

Plaintiff David Christopher Forbes hereby alleges as follows:

## I. NATURE OF ACTION

1. Mr. Forbes was employed as Chief Information Security Officer at Banc of California, N.A. As part of his duties, he advised executive management and the Board on risks to the safety and soundness of banking operations, customer assets and data privacy. Mr. Forbes was informed Banc management of steps needed to comply with FFIEC guidance and specific OCC directives, and was terminated on July 20, 2020.

2. Mr. Forbes filed a complaint in *Forbes v. Banc of California*, Los Angeles Superior Court Case No. 20STCV39588, alleging unlawful retaliation under Cal. Lab. Code § 1102.5 and age discrimination.

3. Under 12 C.F.R. § 4.36, Mr. Forbes is excluded from alleging specific details of the relevant OCC directives and deficient security measures in a public complaint. Thus, pursuant to 12 C.F.R. §§ 4.31, *et seq.*, by and through his attorney, he requested the Office of the Comptroller of the Currency access to non-public OCC information for use as evidence supporting his claim.

4. Unfortunately, Mr. Forbes is also foreclosed from providing his attorney with specific details regarding the information and documents needed to assist in his complaint. Thus, the OCC request contained an abstract description of the information sought, without divulging specific OCC non-public information. Mr. Forbes' counsel provided the OCC with a viable alternative to allow Mr. Forbes to communicate the OCC non-public information, without him divulging the specifics to anyone who should not be privy to non-public information, but the Office of the Comptroller of the Currency refused.

5. Ultimately, the Office of the Comptroller of the Currency denied Mr. Forbes' request to access non-public information. This request for judicial review of the OCC's agency action is thus made pursuant to 5 U.S.C. § 701, et seq.

## II. PARTIES

6. Plaintiff **David Christopher Forbes** is, and at all relevant times was, an individual residing in the State of California.

7. Defendant **Office of the Comptroller of the Currency of the United States** (hereinafter "OCC") is, and at all relevant times was, a bureau of the United States Department of the Treasury.

## III. JURISDICTION AND VENUE

8. Jurisdiction over this request for judicial review exists pursuant to 5 U.S.C. § 704, which makes a "final agency action for which there is no other adequate remedy in court … subject to judicial review." The OCC has rendered a final agency action denying Mr. Forbes' request for release of certain non-public OCC information pursuant to 12 C.F.R. § 4.31, *et seq*. Mr. Forbes has no other remedy than to request federal judicial review and reversal of the OCC's decision, pursuant to 5 U.S.C. § 706.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e), because the OCC is a federal agency and many of the acts and omissions giving rise to this action occurred in this district.

## IV. GENERAL ALLEGATIONS

10. Mr. Forbes has filed suit in the Superior Court of the State of California for the County of Los Angeles against Banc of California, N.A. ("BoC"), Case No. 20STCV39588, alleging unlawful retaliation and age discrimination.

### A. Civil Suit Against Banc of California, N.A.

11. Mr. Forbes began working for BoC on July 4, 2018 and served as its Chief Information Security Officer ("CISO") at the time of his termination on July 20, 2020.

12. During Mr. Forbes employment at BoC, he only received positive feedback pertaining to his work product.



OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

13. In his role as CISO, Mr. Forbes held responsibilities for Privacy, Technology Risk, Records Retention, Business Continuity Planning, and also led the development of the California Consumer Protection Act strategy and operating model. The CISO is specifically tasked with advising executive management and the Board on risks to the safety and soundness of banking operations, customer assets and data privacy.

14. Mr. Forbes made written recommendations based on work with auditors and instruction from the OCC to correct shortcomings he identified at BoC, including inadequate leadership, staffing, and funding to protect customers from cyber-attacks, financial fraud and data privacy disclosures. Commencing in the first quarter of 2020, Lynn Sullivan, Chief Risk Officer ("CRO") and Mr. Forbes' direct supervisor, began consistently overruling Mr. Forbes' recommendations and limited the information Mr. Forbes could share with executive management and the Board.

15. On or about July 2020, Mr. Forbes reported to the CRO that BoC needed to take further steps for data security protections in order to comply with statutes and regulations governing the bank. Rather than heed Mr. Forbes' recommendations, the CRO pushed back against Mr. Forbes and disregarded his suggestions. Further, she reported that BoC would not be taking the recommended steps, thus running afoul of established statutes and regulations. She told Mr. Forbes, "If we're not all on the same page, this is not going to work out," as a threat that Mr. Forbes' employment could be terminated if he kept recommending extra data security protection.

16. A few days later, on July 20, 2020, the CRO informed Mr. Forbes that he was being terminated from BoC. BoC represented to him that his position was being eliminated because BoC was moving in a different direction relative to its consumer and private financial information. Yet, despite BoC's representation that Mr. Forbes' position was eliminated, BoC quickly filled his position with someone younger and less experienced.

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

17. In compliance with 12 C.F.R. § 4.36, Mr. Forbes is foreclosed from alleging specific details of the relevant security measures in a public complaint, and thus requires direct approval from the OCC, pursuant to 12 C.F.R. §§ 4.31, *et seq*.

18. As part of essential discovery to prosecute his case, Mr. Forbes requires access to his former email account, correspondence with Ms. Sullivan, which may touch on or include non-public OCC information. That correspondence and other non-public information probes his claim that he was unlawfully terminated due to his discovery of BoC's substandard security controls, and his insistence that the bank fulfill its duties pertaining to financial security and consumer privacy.

19. Absent access to the use of non-public OCC information, it will be nearly impossible to legally show Mr. Forbes was retaliated and discriminated against.

**B. <u>Correspondence with the Office of the Comptroller of the Currency</u>**

20. On October 21, 2020, Mr. Forbes' counsel sent a letter addressed to the director of the litigation division at the OCC. The undersigned requested access to non-public sensitive financial OCC information for use in the civil suit filed by Mr. Forbes.

21. Prior to the OCC receiving the letter, the OCC was made aware of Mr. Forbes complaint, and sent a letter to Mr. Forbes reiterating that, to obtain non-public OCC information, it was required to "submit a request in writing to the OCC that the agency can approve or deny as appropriate."

22. On or about October 26, 2020, the OCC received Forbes' letter.

23. Thereafter, Mr. Forbes received an acknowledgment letter from the OCC, signed by Marsha Stelson Edney, on November 19, 2020. In her letter, Ms. Edney stated that the request did not adequately specify the records requested, citing 12 C.F.R. § 4.33(b).

24. In response to the OCC's November 19, 2020 letter, Forbes' counsel emailed Ms. Edney explaining Mr. Forbes' understanding that he was not at liberty to provide any specific details to his counsel regarding the non-public OCC information

sought. Thus, Forbes' counsel inquired whether it would be prudent, in an effort to provide as specific information as possible, for Mr. Forbes to contact Ms. Edney directly to relay the appropriate information to her.

25. On or about November 20, 2020, Ms. Edney responded to his counsel stating that she was not comfortable speaking to Mr. Forbes directly without his counsel present. Thus, she stated that Mr. Forbes "should be able to tell [his counsel] at a high level what document(s) or information he is seeking from the OCC."

26. Although Mr. Forbes wanted to provide as specific information as possible, per Ms. Edney's recommendation, Mr. Forbes provided a "high level" explanation of the information being sought. On November 23, 2020, OLGPC provided the OCC with the following information via email:

> Mr. Forbes' complaint centers around the actions taken by Banc of California in relation to the May 2020 OCC examination of the Banc of California's ("bank") IT and Information Security capabilities. Specifically, the OCC required the bank to implement corrective actions related to weaknesses in their IT and Information Security controls. When our client highlighted specific actions needed to address those OCC requirements, Ms. Sullivan disagreed, and immediately took action to fire him. He is thus alleging that Ms. Sullivan's actions amounted to retaliation and wrongful dismissal. Ms. Sullivan's actions also suppress information from being shared with the OCC.

27. Further, it was stated, "**We are requesting OCC permission to cite (by reference) those specific OCC requirements, the associated correspondences (e.g., emails), and staff testimony in our court proceedings**." It was noted that if further detail was required, counsel would be most comfortable with Mr. Forbes emailing Ms. Edney directly, with any response to such communication being directed to OLGPC so as to avoid any back-and-forth exchange between Mr. Forbes and the OCC.

28. Despite OLGPC mentioning Mr. Forbes' willingness to provide more specific information, if needed, there was never a follow up from anyone at the OCC regarding the need for such.

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

29. On December 8, 2020, the OCC sent a final agency decision claiming that the request for access to non-public OCC information was denied "pursuant to 12 C.F.R. § 435(a)(1), (a)(2)(i) and (ii)," and because it purportedly did not meet the requirements under 12 C.F.R. § 4.33(b).

## V. CLAIMS PRESENTED

### A. FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF

30. Plaintiff hereby realleges and incorporates all of the preceding allegations in this complaint as though they were set forth here.

31. An actual controversy exists between the parties' rights to use information the UCC has defined as "non-public OCC information," in Mr. Forbes' LASC Case No. 20STCV39588.

32. Pursuant to 5 U.S.C. § 701, et. seq., Mr. Forbes is entitled to a judicial declaration that in violation of Code § 706 that the OCC's final agency decision was: (1) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law; (2) contrary to constitutional right, power or privilege in that it failed to give Mr. Forbes due process or a meaningful opportunity to be heard; (3) exceeded its authority; (4) unsupported by substantial evidence; and or (5) unwarranted by warranted the facts; (3) Mr. Forbes is entitled access to the information he has requested and is further entitled to use such information as evidence in LASC Case No. 20STCV39588; and (4) Mr. Forbes is extended any other relief this Court deems appropriate.

### B. SECOND CAUSE OF ACTION FOR INJUNCTIVE RELIEF

33. Plaintiff hereby realleges and incorporates all of the preceding allegations in this complaint as though they were set forth here.

34. The OCC has failed to follow or apply its own factors, regulations and procedures, and has failed to consider facts and circumstances presented by and set forth in Mr. Forbes' request. The OCC's decision denying Mr. Forbes' request was arbitrary, capricious and an abuse of discretion.



OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

35. Pursuant to the Administrative Procedure Act, 5 U.S.C. § 701, *et seq*., Mr. Forbes is entitled to injunctive relief: (1) setting the OCC's decision aside; (2) compelling the OCC to provide access to the information sought by Mr. Forbes for use as evidence in LASC Case No. 20STCV39588; and (3) any other relief this court deems appropriate.

36. Alternatively, this Court should compel the OCC to produce the information requested by Mr. Forbes, pursuant to 28 U.S.C. § 1361.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff David Christopher Forbes prays that judgment be entered in his favor and against Defendant, as follows:

1. For a declaratory judgment stating the Office of the Comptroller of the Currency's final agency decision was rendered in error and unsupported by any rational basis;
2. For an injunction reversing the Office of the Comptroller of the Currency's final agency decision, granting David Christopher Forbes access to the non-public OCC information for use in LASC Case No. 20STCV39588; and
3. For such other and further relief as the Court may find appropriate and just.

Dated: January 5, 2021

**OBAGI LAW GROUP, P.C.**

By:________________________
Zein E. Obagi, Jr.
Tara Hattendorf
Attorneys for Plaintiff
DAVID CHRISTOPHER FORBES

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW